**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UTICA MUTUAL INSURANCE COMPANY
and UTICA NATIONAL INSURANCE OF
TEXAS,

          Plaintiffs,

v.

NATIONAL FIRE INSURANCE COMPANY
OF HARTFORD and THE CONTINENTAL
INSURANCE COMPANY,

          Defendants.

                6:24-cv-1300
                 (ECC/ML)

---

Syed Ahmad, Esq., *for Plaintiffs*
Laura B. Dowgin, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiffs Utica Mutual Insurance Company and Utica National Insurance of Texas (together, Utica) bring this diversity action against Defendants National Fire Insurance Company of Hartford (National Fire) and the Continental Insurance Company (Continental, and together with National Fire, CNA) alleging claims related to an insurance coverage dispute. Presently before the Court is CNA's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a stay. Dkt. No. 54; *see infra* Section I.A. The motion is fully briefed. *See* Dkt. Nos. 70, 78, 109, 110. For the following reasons, CNA's motion to dismiss is granted.

## I.    BACKGROUND

### A.    Relevant Procedural History

Utica commenced this action by filing its complaint on October 23, 2024. Dkt. No. 1. On November 21, 2025, CNA moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, for a stay of this action. Dkt. No. 54. That same day, Utica moved for leave to file an amended complaint. Dkt. No. 58. Magistrate Judge Miroslav Lovric granted Utica's motion to amend on February 27, 2026, and Utica filed the Amended Complaint on March 3, 2026. Dkt. Nos. 94, 96.

Because the "only substantive change made in the Amended Complaint is the addition of a bad faith claim" and the "factual allegations and legal theories underlying CNA's Rule 12(c) motion are unchanged," CNA requested that its Rule 12(c) motion be "decided on its existing briefing." Dkt. No. 99. The Court accordingly converted CNA's Rule 12(c) motion for judgment on the pleadings to a Rule 12(b)(6) motion to dismiss the Amended Complaint for failure to state a claim. TEXT Minute Entry dated May 18, 2026.

### B.    The Amended Complaint[1]

#### 1.    The New Country-Enviro Contract

Utica's insured, New Country Motor Cars of Naples, LLC (New Country), entered into a contract with EnviroStruct, LLC (Enviro) in 2019 under which Enviro would build a car dealership for New Country in Naples, Florida. Dkt. No. 96 ¶ 12; Dkt. No. 96-2. This contract provided:

> To the fullest extent permitted by law, [Enviro] shall cause the commercial general liability coverage to include (1) the Owner [New Country], the Architect, and the Architect's consultants as additional insureds for claims caused in whole or in part by

---

[1] These facts are drawn from the Amended Complaint and the exhibits attached thereto. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> [Enviro's] negligent acts or omissions during [Enviro's] operations;
> and (2) the Owner [New Country] as an additional insured for claims
> caused in whole or in part by [Enviro's] negligent acts or omissions
> for which loss occurs during completed operations.

Dkt. No. 96-2 at 14.[2] Such additional insured coverage was required to be "primary and non-contributory." *Id.*

### 2.    The *Roland* Complaint

On February 21, 2023, the "Roland plaintiffs" sued New Country, Enviro, and other defendants in Florida state court for injuries suffered by Brian Roland on December 4, 2021 "while using a car lift during the grand opening of the dealership Enviro built for New Country." Dkt. No. 96 ¶ 14; Dkt. No. 96-1 (the *Roland* complaint). The *Roland* complaint alleges that Mr. Roland fell from the second floor of the dealership "through a 22-inch gap which existed between the end of the car lift platform and the wall," after which he was pinned and crushed by the car lift. Dkt. No. 96-1 ¶¶ 22-25.

The *Roland* complaint alleges that New Country was negligent by, among other things, failing to warn Mr. Roland "that a twenty-two (22) inch gap existed between the edge of the car lift platform and the wall when the car lift was located on the second floor," "[f]ailing to provide adequate guardrails and other fall prevention equipment to protect [Mr. Roland] from falling from the second floor," "[f]ailing to ensure warning signs were on the lift to instruct people that riders were not allowed on the lift," and "[f]ailing to ensure that warning labels were attached to the car lift." *Id.* at ¶ 59(e)-(g), (i). The *Roland* complaint likewise alleges that Enviro, the "general contractor" on the dealership project, was negligent in the same four ways (among others). *Id.* at ¶¶ 76, 80(c)-(e), (i).

---

[2] Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

### 3.    The CNA Insurance Policies Issued to Enviro

National Fire issued a primary general liability policy to Enviro which was in effect on the date of Mr. Roland's accident (the Policy). Dkt. No. 96 ¶ 25; Dkt. No. 96-3. The Policy contains a "Blanket Additional Insured" endorsement which includes as an insured under the Policy:

> any person or organization whom you are required by written contract to add as an additional insured on this coverage part, but only with respect to liability for bodily injury, property damage or personal and advertising injury caused in whole or in part by your acts or omissions, or the acts or omissions of those acting on your behalf:
>
> > A. in the performance of your ongoing operations subject to such written contract; or
> >
> > B. in the performance of your work subject to such written contract, but only with respect to bodily injury or property damage included in the products-completed operations hazard, and only if:
> >
> > > 1. the written contract requires you to provide the additional insured such coverage; and
> > >
> > > 2. this coverage part provides such coverage.

Dkt. No. 96-3 at 106, § 1.[3] However, if the written contract requires, among other things, "additional insured coverage to the greatest extent permissible by law," then Section 2 of the endorsement applies and the policy includes as an insured "any person or organization whom you are required by written contract to add as an additional insured on this coverage part, but only with respect to liability for bodily injury, property damage or personal and advertising injury arising out of your work that is subject to such written contract." *Id.* § 2.

---

[3] All bold formatting of defined terms in the insurance policies has been omitted.

4

Section 3 of the additional insured endorsement provides: "Subject always to the terms and conditions of this policy, including the limits of insurance, the Insurer will not provide such additional insured with: A. coverage broader than required by the written contract." *Id.* § 3.

Continental issued an excess liability policy to Enviro which provides additional coverage "in conformance with" the Policy except for the premium, insurance limits, and other matters not relevant here. *See* Dkt. No. 96 ¶¶ 32-34; Dkt. No. 96-4. The parties agree that whether New Country is entitled to any coverage under the excess policy depends on whether it is entitled to any coverage under the Policy.

### 4.    The *Roland* Lawsuit & Settlement

CNA "refus[ed] to defend and indemnify New Country" in the *Roland* lawsuit. Dkt. No. 96 ¶ 40. Utica, who issued primary and umbrella policies to New Country, "agreed to defend New Country" and therefore paid "amounts like attorneys' fees." *Id.* at ¶¶ 41-43. Utica paid to settle the *Roland* lawsuit on New Country's behalf in November 2024. *Id.* at ¶ 47. Under the terms of Utica's policies, New Country's rights to recover damages from CNA were transferred to Utica, who now acts as assignee and subrogee of New Country's rights. *Id.* at ¶¶ 44-45.

Utica further alleges that CNA acted in bad faith because its determination that it had no duty to defend New Country was "based on facts outside the [*Roland*] complaint," in contravention of settled insurance law. *Id.* at ¶¶ 48-51. Utica alleges that CNA "reversed course and acknowledged that it had a duty to defend New Country" in October 2025. *Id.* at ¶ 52.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to

5

raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    DISCUSSION

The Amended Complaint asserts three causes of action against CNA for: (1) breach of contract by failing to defend and indemnify New Country in the *Roland* lawsuit; (2) a declaratory judgment that CNA had a duty to defend and indemnify New Country under the CNA policies in the *Roland* lawsuit; and (3) breach of the duty of good faith. Dkt. No. 96 ¶¶ 62-80. CNA moves to dismiss the Amended Complaint on the ground CNA had no duty to defend or indemnify New Country under the policies as a matter of law.

### A.    Choice of Law

As an initial matter, the Court must determine which law governs the interpretation of the Policy, which does not contain a choice-of-law provision. CNA argues that Florida law governs the Policy under New York's choice-of-law analysis. Dkt. No. 54-1 at 8-10. Utica argues that "New York and Florida law are consistent" on the relevant issues and therefore that no choice-of-law analysis is necessary. Dkt. No. 70 at 13 n.3.

"A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (citation omitted). Under New York's choice-of-law rules, the "first step in any choice of law inquiry is to determine whether there is an 'actual conflict' between the rules of the relevant jurisdictions." *Id.* (citation and internal quotation marks omitted). Here, as discussed further below, *infra* Section III.C, there is an actual conflict

between New York and Florida law relative to interpreting the insurance contract language at issue. *See Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 317 (2017) (holding that coverage for liability for bodily injury "caused, in whole or in part," by the "acts or omissions" of the named insured applies "to injury proximately caused by the named insured"); *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288 (Fla. 2007) (holding that coverage with respect to "liability because of acts or omissions of the insured" limited coverage to vicarious liability).

New York utilizes the "'center of gravity' or 'grouping of contracts' as the appropriate analytical approach to choice of law questions in contract cases." *Matter of Midland Ins. Co.*, 16 N.Y.3d 536, 543 (2011) (citations omitted). The purpose of this approach is to establish which State has "the most significant relationship to the transaction and the parties." *Id.* at 543-44 (citation omitted). In the context of liability insurance contracts, the jurisdiction with the "most 'significant relationship'" will "generally be the jurisdiction 'which the parties understood was to be the principal location of the insured risk unless with respect to the particular issue, some other jurisdiction has a more significant relationship.'" *Id.* at 544 (citation, ellipses, and brackets omitted).

Here, as CNA points out, the Policy was issued via a Florida insurance broker to Enviro, a Florida company with its principal place of business in Florida. *See, e.g.*, Dkt. No. 96-3 at 3. The state-specific policy forms all concern Florida. *E.g.*, *id.* at 6-9, 13, 19-20. Further, the New Country-Enviro contract concerned the construction of a dealership in Florida, and Mr. Roland's accident occurred in Florida. *See generally* Dkt. Nos. 96-1, 96-2. Although Utica states that it "disagrees" that Florida law applies, Dkt. No. 70 at 13 n.3, it provides no reason why Florida is not the State with the most significant relationship to the transaction and parties here. Accordingly, the Court concludes that Florida law governs the interpretation of the Policy.

7

Under Florida law, the interpretation of an insurance policy "is a question of law." *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (citation omitted). Insurance contracts are construed "according to their plain language." *Id.* (citation omitted). "[A]ny ambiguity which remains after reading each policy as a whole and endeavoring to give each provision its full meaning and operative effect must be liberally construed in favor of coverage and strictly against the insurer." *Id.* (citation omitted).

**B.    "Arising out of" versus "Caused in Whole or in Part by" Standard**

Although the parties agree that the contract between New Country and Enviro requires Enviro to add New Country as an additional insured, the parties dispute which section of the Policy's blanket additional insured endorsement applies to define the scope of additional insured coverage. As set forth above, the endorsement has three relevant provisions:

- Section I, the default provision which provides additional insured coverage "with respect to liability . . . *caused in whole or in part by* [Enviro's] acts or omissions," Dkt. No. 96-3 at 106, § I (emphasis added);

- Section II, which provides additional insured coverage "with respect to liability . . . *arising out of* [Enviro's] work" when the written contract requires "additional insured coverage to the greatest extent permissible by law," *id.* at 106, § II (emphasis added); and

- Section III, which provides that the additional insured will not be provided with "coverage broader than required by the written contract," *id.* at 106, § III.

CNA argues that Section I's "caused in whole or in part by" standard applies in this situation but that, in any event, Section III limits coverage to what is required under the New Country-Enviro contract, which is coverage for "claims caused in whole or in part by [Enviro's] negligent acts or omissions." *See* Dkt. No. 78 at 8 n.1; Dkt. No. 54-1 at 10-11; Dkt. No. 96-2 at 14. Utica argues that Section II's "arising out of" standard is triggered because the New Country-Enviro contract requires additional insured coverage to the "fullest extent permitted by law." Dkt. No. 70 at 13-16.

8

By its plain language, the New Country-Enviro contract does not require "additional insured coverage to the greatest extent permissible by law." Rather, the contract provides: "To the fullest extent permitted by law, [Enviro] shall cause the commercial general liability coverage to include . . . [New Country] as an additional insured for claims caused in whole or in part by [Enviro's] negligent acts or omissions . . . ." Dkt. No. 96-2 at 14, § A.3.1.3. The introductory phrase "[t]o the fullest extent permitted by law" modifies the requirement that New Country be included as an additional insured "for claims caused in whole or in part" by Enviro's negligence but is not a standalone requirement sufficient to trigger Section II of the endorsement and its "arising out of" standard. Thus, whether by virtue of Section I's default provision or by applying the language of the New Country-Enviro contract via Section III's limitation, additional insured coverage only exists for New Country with respect to liability "caused in whole or in part by" Enviro's conduct.[4]

Utica advances two additional arguments why the "caused in whole or in part by" standard should not apply, but neither is convincing. First, Utica argues that application of Section II's "arising out of" standard would not violate Section III because the New Country-Enviro contract generally requires that New Country be added as an additional insured, without limitation, and requires that Enviro provide certificates of insurance. Dkt. No. 70 at 16. But the contract requires the parties to "purchase and maintain insurance" only as set forth in a separate exhibit, Dkt. No.

---

[4] Utica argues that insuring "claims" caused in whole or in part by Enviro's conduct is "notably broader" than insuring "liability" for the same. Dkt. No. 70 at 17-18. However, the Policy insures "liability," and Utica has not explained how the New Country-Enviro contract's use of the word "claims" could operate to expand the scope of the Policy's coverage. Nor has Utica explained the practical difference between "claims" and "liability" in this particular situation, where Utica has already paid to settle the *Roland* lawsuit on behalf of New Country.

9

96-2 at 8, § 8.5.1, and the provision regarding certificates of insurance is a requirement to provide proof of insurance, not a separate obligation to provide coverage, *id.* at 14 § A.3.1.1.

Second, Utica argues that the word "include" in the sentence "To the fullest extent permitted by law, [Enviro] shall cause the commercial general liability coverage *to include* . . . [New Country] as an additional insured . . ." creates a "floor" of coverage, not a "ceiling." Dkt. No. 70 at 16-17. The Court agrees with CNA that the word "include" here is not being used to introduce "exemplary, non-limiting material." Dkt. No. 78 at 9. Rather, the word signifies that New Country must be "included" as an additional insured for the specified scope of coverage.

In sum, whether under Section I of the Policy's additional insured endorsement or whether under Section III and the New Country-Enviro contract's language, New Country is an additional insured under the policy with respect to liability "caused in whole or in part by" Enviro's conduct.

### C.    Whether "Caused in Whole or in Part by" Requires Vicarious Liability

The parties next dispute whether the "caused in whole or in part by" standard limits additional insured coverage only to situations where the additional insured is held vicariously liable for the named insured's negligence. CNA argues that under Florida law the answer is yes, relying on *Garcia v. Federal Insurance Company*, 969 So. 2d 288 (Fla. 2007). Dkt. No. 54-1 at 11-13. Utica argues that the answer is no, because (1) the plain language of the standard does not require vicarious liability, (2) *Garcia* interpreted materially different language, and (3) other Florida state-court cases have rejected CNA's argument. Dkt. No. 70 at 18-26.[5]

---

[5] Utica also argues that the "caused in whole or in part" standard does not require vicarious liability under New York law. Dkt. No. 70 at 19 (citing *Burlington*, 29 N.Y.3d at 324-25). As set forth in this decision, however, the Court concludes that Florida law conflicts with New York law in this regard and that Florida law applies to the interpretation of the Policy.

### 1.    *Garcia* and its progeny

In *Garcia*, the Supreme Court of Florida considered "whether a clause covering 'any other person with respect to liability *because of* acts or omissions' of the named insured covers only vicarious liability for the negligence of the named insured." 969 So. 2d at 291 (emphasis added). Relying on the unambiguous plain language of this provision, the court concluded that the words "clearly indicate" that an additional insured is only entitled to coverage with respect to "liability that is *caused by* or occurs *by reason of*" the named insured's acts or omissions, i.e., vicarious liability. *Id.* at 291-92, 294; *see id.* at 293 ("[T]he presence of the words 'because of' . . . requires that an additional insured's liability be 'caused by' the acts or omissions of the named insured.").[6] Therefore, because the individual seeking additional insured coverage in that case was sued "for her own negligence" and it was not alleged that she was liable for the named insured's acts or omissions, she was not entitled to coverage. *Id.* at 292.

"Federal district courts applying Florida law to additional-insured endorsements such as the ones in this case [which cover liability "caused, in whole or in part, by" the named insured] have consistently ruled in line with *Garcia*," finding that such endorsements "did not extend coverage where the underlying lawsuit did not allege that the additional insured was vicariously liable for the direct negligence of the named insured." *Tokio Marine Specialty Ins. Co. v. Clear Blue Specialty Ins. Co.*, 812 F. Supp. 3d 1271, 1280 (S.D. Fla. 2025) (collecting cases); *see also Old Republic Gen. Ins. Corp. v. Liberty Ins. Corp.*, No. 21-cv-23825, 2022 WL 1203007, at *2 (S.D. Fla. Apr. 22, 2022) (noting that courts have found no additional insured coverage where the additional insured was sued for its own negligence and not the named insured's negligence, even

---

[6] The *Garcia* court also specifically noted that "arising out of" language is "broader" than the "because of" language it interpreted. *Id.* at 293.

with the addition of the phrase "in whole or in part"). In *Cincinnati Specialty Underwriters Insurance Co. v. KNS Group, LLC*, for example, the Eleventh Circuit considered an additional insured endorsement that limited coverage to certain types of injury or damage "caused, in whole or in part, by" the named insured's negligence. No. 21-13628, 2022 WL 5238711, at *1 (11th Cir. Oct. 6, 2022) (per curiam). The Eleventh Circuit interpreted this provision consistent with *Garcia* to cover the additional insured "only for damages that [the named insured or its agents] completely or partially caused." *Id.* at *3. The court further rejected the argument that the term "in part by" required a different interpretation, explaining that the term "caused in part by" means "that even if the complaint alleged [the named insured] was only 1% responsible for causing the faulty workmanship," the insurer would have a duty to defend the additional insured. *Id.*

As another example, a district court similarly considered an additional insured endorsement extending coverage to liability "caused in whole or in part" by the named insured in *Robert L. Strauss, P.A. v. Gemini Insurance Company*, 742 F. Supp. 3d 1184 (S.D. Fla. 2024). Following *Garcia* and *Cincinnati*, the court concluded that the endorsement "limit[ed] coverage to instances where an additional insured is being held vicariously liable for the acts or omissions of the named insured." *Id.* at 1200 (noting that the "caused in whole or in part" by language was "even more narrow than the policy language in *Garcia*" because it "jumps the 'because of' hurdle and *directly* states that coverage only extends when the liability is 'caused,' 'in whole or in part,' by [the named insured's] negligence"). Because the additional insured was only sued for its own direct negligence, and not any vicarious liability for the named insured's negligence, it was not covered by the policy. *Id.* at 1201.

Utica argues that *Garcia* interpreted "materially different language" and did not address liability "caused in whole or in part by," and more generally argues that the term "in part" is

12

incompatible with a vicarious liability requirement. Dkt. No. 70 at 18, 22-23. It is true that vicarious liability is liability "based solely on the legal imputation of responsibility for another party's tortious acts." *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 468 (Fla. 2005). But the fact that a party might be vicariously liable for another party's negligence does not mean that the negligent party must be 100% at fault; rather, the "vicariously liable party is liable only for the amount of liability apportioned to the tortfeasor." *Id.* Thus, it is possible that Enviro could cause an injury "in part" and that another party, such as New Country, could be held vicariously liable. The use of the term "in part" is not necessarily incompatible with vicarious liability. *See also Old Republic Gen. Ins. Corp.*, 2022 WL 1203007, at *2 ("At a minimum, for additional insured coverage, the additional insured's liability must be at least *partially* the result of its vicarious liability for the insured's negligence.").

Accordingly, based on *Garcia* and the other cited authority, the Court concludes that coverage for liability "caused in whole or in part by" Enviro's acts or omissions requires that Utica be vicariously liable for Enviro's conduct.

### 2.    Florida state court cases

Under its theory that *Garcia* interpreted materially different language and does not govern the outcome here, Utica cites three Florida state court cases as "indicator[s] of how the Florida Supreme Court would rule" with respect to "caused in whole or in part" language. Dkt. No. 70 at 21-24. These cases are distinguishable and/or do not account for the holding in *Garcia*.

Utica first cites *Mid-Continent Casualty Co. v. Royal Crane, LLC*, 169 So. 3d 174 (Fla. 4th Dist. Ct. App. 2015). There, the Florida Fourth District Court of Appeal considered whether an indemnification clause qualified as an "insurance contract" under the insurance policy at issue, which defined "insurance contract" as an agreement to "assume the tort liability of another party . . . provided the 'bodily injury' or 'property' damage is caused, in whole or in part," by the named

insured. *Id.* at 182. The court held that this definition should not "be construed so narrowly" as to require vicarious liability and was satisfied "where the injury is caused by the indemnitee's negligence, so long as the named insured 'caused' some part of the injuries or damages or is otherwise vicariously liable." *Id.* at 183. However, *Royal Crane* interprets the definition of "insured contract," not the scope of coverage under an additional insured endorsement, and does not mention or address the holding in *Garcia*. *See Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, No. 20-cv-20442, 2020 WL 3317035, at *8 (S.D. Fla. June 18, 2020) (finding *Royal Crane* "inapposite" because it "openly appl[ied] a 'relaxed standard,'" "did not address the Florida Supreme Court's ruling in *Garcia*," and "did not involve an additional insured endorsement").

Utica next cites *Zep Construction, Inc. v. Interstate Fire & Casualty Company*, 18 Fla. L. Weekly Supp. 65a (Fla. 12th Cir. 2010), which concluded that the phrase "in whole or in part" granted the additional insured coverage "so long as there is any fault on the part of" the named insured. Dkt. No. 70-3 at 8. To support this conclusion, however, the court cites cases applying Texas and Alabama law, not Florida law. *See id.* Nor does the court address *Garcia*.

Finally, Utica cites *Schmid Construction, Inc. v. H&M Builders, LLC*, No. 2021-1020-CA-01, 2023 WL 12023433 (Fla. Cir. Ct. July 24, 2023), which involved additional insurance coverage for liability "caused in whole or in part[] by" the named insured's acts or omissions. The court, relying on *Royal Crane*, found the endorsement to be ambiguous and therefore construed it in favor of the party seeking coverage. *Id.* at *2-3. The court stated in passing that *Garcia* was "factually distinguishable," but does not explain how. *Id.* at *2.

In sum, the Court concludes that none of the Florida state court cases Utica cites presents a persuasive or compelling reason to depart from the Florida Supreme Court's clear holding in *Garcia* and the weight of authority that has applied *Garcia* to the exact language at issue here.

14

### D.    Whether the *Roland* Complaint Alleged Vicarious Liability

Based on the above, New Country is entitled to coverage as an additional insured under the Policy with respect to the *Roland* lawsuit only if it could be held vicariously liable for Enviro's acts or omissions. Utica argues that CNA's motion should be denied "even if vicarious liability [i]s the standard" because Utica alleged that New Country was vicariously liable for Enviro's conduct. Dkt. No. 70 at 11-13. Specifically, the Amended Complaint alleges that "[a]ny liability for bodily injury suffered by New Country arises out of Enviro's work . . . and would be based on New Country being vicariously liable for Enviro's acts or omissions." Dkt. No. 96 ¶ 20. Utica argues that this allegation must be accepted as true on CNA's motion to dismiss. Dkt. No. 70 at 12.

Utica's argument is unpersuasive for at least three reasons. First, Utica's allegation that New Country's liability in the *Roland* lawsuit "would be" by virtue of vicarious liability is a legal conclusion, not an allegation of fact. The Court therefore need not accept it as true. *Iqbal*, 556 U.S. at 678. Second, when "documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." *JRS Ltd. v. ACE Am. Ins. Co.*, No. 25-cv-730 (MAD/PJE), 2026 WL 832623, at *3 (N.D.N.Y. Mar. 26, 2026) (citation omitted). Because the *Roland* complaint is attached to the Amended Complaint as an exhibit, the Court need not accept Utica's characterization of the complaint—to the extent it contradicts the document—as true.

Third, under Florida law vicarious liability must be "specifically pled" in the complaint. *Goldschmidt v. Holman*, 571 So. 2d 422, 423-24 (Fla. 1990); *see also, e.g.*, *Nguyen v. Perspective Global, LLC*, 387 So. 3d 1265, 1269 (Fla. 2d Dist. Ct. App. 2024) (noting that it is "true generally" that "vicarious liability must be pleaded as a separate cause of action" in Florida). Utica does not

15

contest that Florida law requires vicarious liability to be separately pled; nor does Utica contend that the *Roland* complaint does so. Although Utica argues that it could show that New Country "was in fact vicariously liable for Enviro even if the Rolands did not plead vicarious liability against New Country," Dkt. No. 70 at 13, Utica does not explain, given Florida's separate pleading requirement, how New Country could be held liable on an unpled theory.

Accordingly, under the above analysis, New Country is not entitled to additional insured coverage under the Policy or excess policy with respect to the *Roland* lawsuit.

### E.      Duty to Defend

Although the Court's conclusion that New Country is not entitled to coverage under the Policy would ordinarily result in CNA's motion to dismiss being granted without further analysis, here the parties dispute whether CNA has previously conceded it owed a duty to defend and the impact of that concession on this case. *See* Dkt. Nos. 99, 106. The Court therefore solicited further briefing from the parties regarding "the impact, if any, of [CNA's] allegedly inconsistent representations regarding the duty to defend on the Court's resolution" of the motion to dismiss, Dkt. No. 108, and the parties filed sur-replies, Dkt. Nos. 109, 110.

Although the motion presently before the Court is a Rule 12(b)(6) motion to dismiss, this case was filed in October 2024 and the parties have engaged in some discovery. On October 22, 2025, CNA wrote to Magistrate Judge Lovric requesting a pre-motion conference regarding an anticipated motion to stay this action pending the trial in the underlying state-court action. *See* Dkt. No. 45. In that letter, CNA stated: "CNA's position is that the only issue that was ripe for adjudication in this matter, the duty to defend, has now been resolved." *Id.*[7] At an October 27,

---

[7] CNA's sur-reply also references an October 8, 2025 "settlement" letter sent to Utica's counsel in which CNA stated: "CNA is willing to concede the duty to defend at this time and will agree to reimburse Utica for New Country's reasonable post-tender fees and costs." Dkt. No. 58-6 at 2. CNA argues that this letter is an inadmissible settlement communication under Federal Rule of

2025 conference with Magistrate Judge Lovric, CNA's counsel stated: "During the course of this litigation, CNA has conceded that it owed the duty to defend. We have offered to reimburse all defense costs incurred. That cause of action is now moot. There is no longer any dispute as to the duty to defend." Dkt. No. 60 at 4:18-22. CNA subsequently reversed course and now takes the position that it does not owe, and never owed, a duty to defend to New Country.[8]

Utica argues that CNA's motion should be denied based on CNA's prior concession of the duty to defend under the doctrines of judicial estoppel, judicial admission, and waiver. Dkt. No. 109 at 6-8. CNA generally argues in response that none of these three doctrines applies and that CNA's concession "cannot conjure coverage that Florida contract law forecloses." Dkt. No. 110 at 5.[9]

### 1.    Judicial Estoppel

The purpose of judicial estoppel, an equitable doctrine "invoked by a court at its discretion," "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (summary order) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). Judicial estoppel typically will apply if "1) a party's later

---

Evidence 408. The issue, however, is not what CNA said in a settlement letter to Utica, but what representations CNA made to the Court. Similarly, the issue is not whether CNA in fact owed New Country a duty to defend as a legal matter, but whether CNA's prior representations to the Court bind it in any way.

[8] It appears that CNA "change[d] [its] legal position following the discovery of" *Garcia* and after Utica rejected CNA's offer to settle the duty to defend portion of Utica's action. *See* Dkt. No. 90 at 1.

[9] CNA also argues that Utica's arguments about the concession rely on extrinsic materials which may not be considered on a Rule 12(b)(6) motion to dismiss. Dkt. No. 110 at 5-7. However, CNA has not provided authority or explained why the Court may not consider its docket and prior proceedings in this matter in considering these equitable doctrines.

position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750-51). The doctrine is limited to "situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (citation omitted).

The Court concludes that application of judicial estoppel is not appropriate in these circumstances. Although CNA has asserted inconsistent positions before this Court, it is not clear that Magistrate Judge Lovric "adopted" CNA's position that it owed no duty to defend in some way. Magistrate Judge Lovric denied the stay CNA requested and, although he extended the deadline for filing a dispositive motion, it is not clear that he did so only or primarily because of CNA's representations.[10] Furthermore, even assuming *arguendo* that Magistrate Judge Lovric granted an extension of deadlines based on CNA's representations, entertaining CNA's current position presents no risk of "inconsistent results" that would undermine judicial integrity.

Additionally, the Court cannot conclude that CNA will gain an unfair advantage against Utica given that CNA's "reversal" came shortly after its October 2025 representations. CNA filed the present motion to dismiss—which argues that New County is not an additional insured under the Policy entitled to defense or indemnification—on November 21, 2025 and well before the extended dispositive motion deadline in March 2026.[11] Although Utica argues that it will be forced

---

[10] It appears that Utica agreed to an extension of the dispositive motion deadline. *See* Dkt. No. 49 at 1.

[11] CNA also filed a letter formally "correct[ing]" its prior statements on February 25, 2026. Dkt. No. 90.

to "spend additional time and money litigating an issue CNA already conceded," Dkt. No. 109 at 7, it does not articulate any detrimental reliance it took in October or early November 2025.

Thus, the Court concludes that CNA's October 2025 representations do not give rise to judicial estoppel.

### 2.    Judicial Admission

Utica's argument that CNA's concession is a binding judicial admission fails for the simple reason that CNA's prior representations to the Court, although unequivocal, related to a legal question and were not admissions of fact. *See In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) ("To constitute a judicial admission, the statement must be one of fact—a legal conclusion does not suffice." (citation omitted)); *see also N.Y. State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998) ("Plaintiffs' statements of their theory of the case do not constitute judicial admissions.").

### 3.    Waiver

Utica argues that CNA "waived any argument that it did not owe a duty to defend" by conceding that duty. Dkt. No. 109 at 8. The Court finds this argument unconvincing for at least two reasons. First, Utica has not addressed CNA's revocation of any such waiver, which occurred shortly after the representations to Magistrate Judge Lovric in October 2025 and did not result in any apparent detrimental reliance by Utica. *See supra* Section III.E.1. Second, the general rule is that "[w]aiver cannot create coverage where none exists." *Universal Prop. & Cas. Ins. Co. v. Jean*, 426 So. 3d 504, 505 (Fla. 4th Dist. Ct. App. 2025) (citation omitted). CNA's representations to Magistrate Judge Lovric in October 2025 therefore do not outweigh the legal interpretation of the Policy that New Country is not an additional insured.

In sum, although the Court finds CNA's unequivocal representations to the Court in October 2025 that it had a duty to defend somewhat imprudent, none of the doctrines proffered by

Utica justifies departing from the result reached on CNA's motion to dismiss under the ordinary Rule 12(b)(6) motion analysis. CNA is thus entitled to dismissal of the Amended Complaint, and the Court does not address CNA's alternative request for a stay of this action. However, under these circumstances the Court exercises its discretion to deny CNA costs as a prevailing party under Federal Rule of Civil Procedure 54(d). *See, e.g., Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) ("[T]he decision to award costs under Rule 54(d)(1) is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted); *Bochner v. City of New York*, 118 F.4th 505, 526-27 (2d Cir. 2024) (denying costs to party whose actions "unreasonably and unnecessarily delayed consideration" of jurisdictional question).

## IV.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, Dkt. No. 54, is **GRANTED**, and the Amended Complaint is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment accordingly and close this action.

**IT IS SO ORDERED.**

Dated: August 3, 2026

_____
Elizabeth C. Coombe
U.S. District Judge